RICHARD I. BLANKENBAKER ET AL. *v.* GREAT CENTRAL LIFE INSURANCE COMPANY.

[No. 671A116. Filed April 4, 1972. Rehearing denied May 5, 1972. Transfer denied November 11, 1972.]

*John F. Townsend, Jr., Townsend, Hovde & Townsend,* of Indianapolis, for appellant.

*John N. Thompson, Howard J. De Trude, Jr., Kightlinger, Young, Gray & Hudson,* of Indianapolis, for appellees.

BUCHANAN, J.—STATEMENT OF THE CASE AND FACTS—This is an appeal from a Summary Judgment entered against defendants-appellants, Richard Blankenbaker, Charles Murphy, Paul Ferneding, and John Kirkpatrick (Blankenbaker), in an action by plaintiff-appellee, Great Central Insurance Company (the Company), seeking a Declaratory Judgment denying the applicability of the uninsured motorist provision of an automobile insurance policy issued by the Company to Blankenbaker.

The record indicates these facts.

On December 1, 1966, the Company issued to Blankenbaker

an automobile insurance policy (the policy). With respect to the uninsured motorist clause, the policy provided:

"I. *Damages for Bodily Injury Caused by Uninsured Automobiles:* The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an *uninsured automobile* because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury', sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured *automobile;* provided, for the purposes of this endorsement, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so, the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

\* \* \*

"II. Definitions:

\* \* \*

"(c) 'uninsured automobile' means:

\* \* \*

"(2) a hit-and-run automobile as defined:

\* \* \*

"(d) *'hit-and-run automobile' means an automobile which causes bodily injury* to an insured *arising out of physical contact of such automobile* with the insured or with an automobile which the insured is occupying at the time of the accident, provided: (1) there cannot be ascertained the identity of either the operator or owner of such 'hit-and-run automobile'; (2) the insured or someone on his behalf shall have reported the accident within 24 hours to a police, peace or judicial officer or the Commissioner of Motor Vehicles, and shall have filed with the company within 30 days thereafter a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and (3) at the company's request, the insured or his legal representative makes available for inspection the automobile which the insured was occupying at the time of the accident." (Emphasis supplied.)

\* \* \*

After dark on September 15, 1967, at approximately 8:30 P.M., Blankenbaker was driving along a highway in Wisconsin in his camper-bus with the other three appellants as passengers. The highway was a single-lane highway with a white line dividing the northwest-bound traffic from the southeast-bound traffic. While proceeding in a northwest direction, the camper-bus struck a large, immobile truck tire and rim with attached angle iron directly in its path as it proceeded in the northwest-bound lane. Blankenbaker thereby lost control of the steering, causing the camper-bus to roll over with resulting injuries to all of the passengers. No other vehicle was involved in the accident, and none was in the vicinity of the accident.

Blankenbaker was the only individual in the camper who saw the tire and rim assembly, seeing it momentarily before the accident occurred. It was not found after the accident and Blankenbaker was unable to explain how it happened to be there. He assumed it was dropped by a large vehicle. There is nothing in the record to establish the source of the tire and rim assembly except the following testimony of Blankenbaker:

> "121 Q. Do you know, Mr. Blankenbaker, how that tire and wheel got there?
> A. No.
> 122 Q. Do you know what it was off of?
> A. (Shook head.)
> 123 Q. You are shaking your head meaning — ?
> A. No. It has to be off —
> 124 Q. (interposing) I'm asking you if you know. I'm not asking for an assumption of what it might have been off of. I'm asking you if you know where this tire came from?
> A. No, I don't know where it came from, except it had to have come off a big vehicle." (Tr. p. 69.)

Blankenbaker subsequently filed a claim with the Company alleging that the tire and rim assembly constituted a hit-and-

run automobile within the meaning of the uninsured motorist provision of the policy.

The Company refused the claim and after other proceedings not pertinent here the Company brought an action for Declaratory Judgment in the Hancock Circuit Court which granted its Motion For Summary Judgment on January 15, 1971. The court found that the facts as alleged by Blankenbaker did not constitute an accident with a hit-and-run automobile within the terms of the policy; that no right of recovery existed under the uninsured motorist provision; that no issue for arbitration was created by Blankenbaker; and that he was not entitled to pursue his claim against the Company by arbitration.

ISSUE—Did a material issue of fact exist as to whether contact by Blankenbaker's camper-bus with the truck tire and rim assembly constituted "physical contact" with an uninsured "hit-and-run automobile" within the meaning of the policy?

Blankenbaker contends that the trial court erred in granting summary judgment because a material issue of fact was raised as to whether the accident with the tire and wheel assembly constituted "physical contact" with a hit-run automobile within the terms of the policy.

The Company contends that a tire and rim is not an automobile or a motor vehicle. Also, there was no indirect contact with another vehicle as none was shown to even be in the vicinity, so the uninsured motorist clause of the policy is inapplicable to this particular accident.

No issue is raised as to whether the American Arbitration Association had exclusive jurisdiction to arbitrate the issues raised under the terms of the policy because it was not part of the errors claimed in the Motion To Correct Errors. TR. 59(G) and AP. 8.3(A)(7). *In Re Annexation to Muncie* (1971), 150 Ind. App. 245, 276 N. E. 2d 199.

DECISION—It is our opinion that no genuine issue of material fact existed as to whether an accident occurred between Blankenbaker's camper-bus and the tire and rim assembly so as to constitute "physical contact" between an uninsured "hit-and-run automobile" within the meaning of the policy. Only an issue of law was presented.

Rule TR. 56(C) of the Indiana Rules of Civil Procedure provides, in part, that summary judgment "* * * shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on Motions For Summary Judgment, the trial court may not try issues of fact or determine the preponderance of the evidence. Rather, the court is limited to the sole determination of whether there are any issues of material fact which should be tried. *Central Realty, Inc.* v. *Hillman's Equipment, Inc.* (1969), 253 Ind. 48, 246 N. E. 2d 383; *Verplank* v. *Commercial Bank of Crown Point* (1969), 145 Ind. App. 324, 251 N. E. 2d 52; *Walsh* v. *Fulton County Farm Bureau Coop. Ass'n.* (1969), 146 Ind. App. 42, 252 N. E. 2d 609. Summary Judgment, therefore, "is a procedure for applying the law to the facts when no factual controversy exists." *Central Realty, Inc.* v. *Hillman's Equipment, Inc., supra.*

The guiding rules and principles for determining whether a factual controversy exists have frequently been stated by this and the Supreme Court in recent years. We know that:

The burden is on the proponent of a Motion For Summary Judgment to conclusively demonstrate the absence of any genuine issue as to a material fact and that such proponent is entitled to a judgment as a matter of law.

Any doubt as to the existence of a genuine issue as to

a material fact must be resolved against the proponent of a Motion For Summary Judgment.

The contents of pleadings, depositions, answers to interrogatories, admissions and affidavits must be liberally construed in favor of the respondent to a Motion For Summary Judgment, and the facts asserted by such respondent supported by affidavit must be taken as true.

These and other governing principles have been summarized in such recent decisions of this court as: *Wozniczka* v. *McKean* (1969), 144 Ind. App. 471, 247 N. E. 2d 215; *Doe* v. *Barnett* (1969), 145 Ind. App. 542, 19 Ind. Dec. 88, 251 N. E. 2d 688; *Mayhew* v. *Deister* (1969), 144 Ind. App. 111, 244 N. E. 2d 448; *Houston* v. *First Federal Savings & Loan Assoc.* (1969), 144 Ind. App. 304, 246 N. E. 2d 199; and *Verplank* v. *Commercial Bank, supra.*

Our search for a genuine issue as to a material fact in this controversy has been futile. The Company expressly or impliedly concedes that there was a tire and rim assembly at rest in the highway which was struck by Blankenbaker's camper-bus and that it came into contact with the tire and rim assembly thereby causing the camper-bus to overturn with resulting injuries to the passengers. Another established crucial fact is Blankenbaker's own statement that he did not know where the tire and rim assembly came from but that it had to come off of a big vehicle, all of which the Company also concedes to be true.

Blankenbaker's argument that a material issue of fact exists because these "objects were dropped by a truck" and therefore "an issue of fact exists ipso facto that the objects struck constitute an 'automobile' for purposes of the policy," is not a *genuine* issue of fact. For two reasons. *One,* whether an immobile tire and rim assembly is an automobile is a question of law and not a question of fact. *Two,* by his own admission Blankenbaker could not relate the tire to anything

other than a "big vehicle" which the Company is also willing to concede.

Since we find no factual controversy to exist we turn our attention to the law which should be applied to the uncontroverted facts of this case.

The uninsured motorist provision in the policy we are construing defines a hit-and-run automobile to be *"an automobile* which causes bodily injury to an insured arising out of physical contact of such *automobile * * *."*

"Automobile" has been defined to mean "a four-wheel land motor vehicle containing within itself methods of propulsion by some form of a motor." *Seaboard Fire & Marine Ins. Co.* v. *Gibbs* (4th Cir. 1968), 392 F. 2d 793; *Canal Ins. Co.* v. *Stidham* (1967), 281 Ala. 493, 205 So. 2d 516; *Washington Nat'l. Ins. Co.* v. *Burke* (Ky. 1953), 258 S. W. 2d 709; *Hoover* v. *Nat'l. Casualty Co.* (1942), 236 Mo. App. 1093, 162 S. W. 2d 363. In 12 *Couch on Insurance* 2d § 45:167, it is stated that:

> "In determining whether a particular vehicle is an 'automobile' or 'car' for the purposes of an automobile liability policy, the courts have applied such general principles of construction as the rule that the terms of the policy are to be given their ordinary and usual meaning, and therefore the words 'automobile' or 'car' should be interpreted as they are popularly understood."

To be an automobile, the instrumentality must be a self-propelled, four-wheeled landroving vehicle. The tire and rim assembly was not self-propelled, nor was it a four-wheeled landroving vehicle. In *Harley* v. *Casualty Ins. Co. of Tennessee* (1929), 40 Ga. App. 171, 149 S. E. 76, the nearest case in point that our research discovers, a disengaged bolt from a passing car which struck the plaintiff was determined not to be a hit-and-run automobile.

So we must necessarily conclude that as a matter of law the tire and rim assembly which Blankenbaker struck is not a hit-run automobile within the terms of the policy. There was

no direct physical contact by the camper-bus with an "automobile." To reach any other conclusion would be a significant retreat from reality.

Our next consideration is whether as a matter of law there was indirect physical contact with an automobile.

The general rule in most jurisdictions, including Indiana, is that the occurrence of some type of physical contact between a hit-and-run *vehicle* and the insured vehicle is a condition precedent to the enforcement of claims arising out of hit-and-run accidents. *Amidvich* v. *Charter Oak Fire Ins. Co.* (1969), 44 Wis. 2d 45, 170 N. W. 2d 813; *State Farm Mutual Auto Ins. Co.* v. *Stinola* (5th Cir. 1967), 374 F. 2d 873; *Johnson* v. *State Farm Mutual Auto Ins. Co.* (1967), 70 Wash. 2d 587, 424 P. 2d 648; *Barfield* v. *Insurance Co. of North America* (1968), 59 Tenn. App. 631, 443 S. W. 2d 482; *Bellavia* v. *Motor Vehicle Accident Indemnification Corp.* (1961), 28 Misc. 2d 420, 211 N. Y. S. 2d 356; *Prosk* v. *Allstate Insurance* (1967), 82 Ill. App. 2d 457, 225 N. E. 2d 498; *Roloff* v. *Liberty Mutual Ins. Co.* (La. App. 1966), 191 So. 2d 901; *Basore* v. *Allstate Ins. Co.* (Mo. App. 1963), 374 S. W. 2d 626; see, generally, 25 A. L. R. 3d 1299 and 12 *Couch on Insurance* 2d § 45:653.

In *Ely* v. *State Farm Mutual Automobile Ins. Co.* (1971), 148 Ind. App. 586, 268 N. E. 2d 316, Judge Sullivan spoke of the requirement of physical contact thusly:

> "It is clear to us that where, as here, there is *no contact*, direct or indirect, between the 'hit-run' *vehicle* and the vehicle occupied by the insured, there can be no recovery. Lawrence v. Beneficial Fire & Cas. Co., supra; Page v. Insurance Company of North America (1967), 256 Cal. App. 2d 374, 64 Cal. Rep. 89; Prosk v. Allstate Insurance Co., supra; Roloff v. Liberty Mutual Insurance Co. (La. 1966), 191 So. 2d 901; Coker v. Nationwide Insurance Co. (1968), 251 S. Car. 175, 161 S. E. 2d 175; Smith v. Allstate Insurance Co. (1970 Tenn.), 456 S. W. 2d 654; Amidvich v. Charter Oak Fire Insurance Co. (1969), 44 Wis. 2d 45, 170 N. W. 2d 813." (Emphasis supplied.)

As a result, the absence of physical contact between the injured person and a hit-and-run vehicle is fatal to a claim under an uninsured motorist clause.

Blankenbaker cites several New York cases espousing the indirect physical contact doctrine in which objects protruding from passing vehicles, or objects thrown from passing vehicles, or parts falling off of passing vehicles and striking the insured's automobile, were determined to be indirect physical contact with a hit-and-run vehicle, thereby allowing recovery under an uninsured motorist provision. *Re Colestock* (1968), 28 A. D. 2d 1205, 285 N. Y. S. 2d 356; *Gavin* v. *MVAIC* (1968), 57 Misc. 2d 335, 292 N. Y. S. 2d 745; *Smith* v. *Great American Ins. Co.* (1970), 35 A. D. 2d 233, 315 N. Y. S 2d 388; *MVAIC* v. *Eisenberg* (1966), 18 N. Y. 2d 1, 218 N. E. 2d 524. These cases are distinguishable. They involve questions of whether contact must be direct or indirect. In each of them an automobile or vehicle was present at the scene of the accident and, in fact, was a direct cause of the contact with the insured's vehicle.

In the case before us, no other vehicle was shown to be within the area of the accident. There was a total lack of evidence tending to establish a causal connection between *some* vehicle and this tire and rim assembly. The assembly was not shown to be a part of a hit-and-run automobile, which is essential to invoking the indirect physical contact doctrine. *Amidvich* v. *Charter Oak Fire Ins. Co., supra; State Farm Mutual Auto Ins. Co.* v. *Stinola, supra; Ely* v. *State Farm Mutual Automobile Ins. Co., supra.* Consequently, there was no physical contact, direct or indirect, with a hit-and-run "automobile."

Even if it is assumed that the tire and rim assembly had momentarily come to rest after falling off an ongoing vehicle, contact by the camper-bus with it is too remote and disconnected to constitute contact with an "automobile." We

reject the indirect physical contact doctrine. To accept it is to rewrite the contract between the parties.

The lack of connection between this tire and rim assembly and a motor vehicle is somewhat analogous to the situation in *Caedill* v. *Nationwide Mutual Ins. Co.* (N. Car. 1965), 142 S. E. 2d 616, where an action was brought under an uninsured motorist provision alleging death by a hit-and-run driver. The plaintiff introduced evidence that the insured had been driving his automobile along a highway when it overturned. There was some evidence of an unknown tire track near the scene causing the plaintiff to argue that a hit-and-run (phantom) vehicle had caused the insured's death. It was held as a matter of law there was no uninsured motorist coverage on the ground there was no evidence that the overturning of the insured's automobile was caused by an uninsured hit-and-run motorist.

The trial court properly found that no factual controversy existed between the parties and correctly applied the law to those facts. Fnding no error, the summary judgment is affirmed.

White, P.J., and Sullivan, J., concur.

NOTE.—Reported in 281 N. E. 2d 496.